Hillsborough-northern judicial district
Merrimack
Nos. 2001-240
    2000-531

### THE STATE OF NEW HAMPSHIRE

v.

### RODNEY GLODGETT

Argued: September 19, 2002
Opinion Issued: November 26, 2002

*Philip T. McLaughlin*, attorney general (*Simon R. Brown*, senior assistant attorney general, on the brief and orally), for the State.

*Christopher Johnson*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

DALIANIS, J. The defendant, Rodney Glodgett, appeals his convictions following separate trials for five counts of felonious sexual assault, *see* RSA 632-A:3 (1996), and one count of attempted felonious sexual assault, *see* RSA 629:1 (1996); *see also* RSA 632-A:3, in Merrimack County Superior Court (*Manias*, J.), and three counts of felonious sexual assault in Hillsborough County Superior Court (*Barry*, J.). We affirm.

This is the second time we have dealt with the conduct alleged in the defendant's Merrimack County trial. In *State v. Glodgett*, 144 N.H. 687, 688 (2000) (*Glodgett I*), we reversed the defendant's convictions because the trial court erroneously allowed the State to admit evidence of uncharged sexual assaults at trial. In summarizing the relevant facts of this case, we incorporate by reference the facts detailed in *Glodgett I*.

Upon remand, the defendant was retried on the four original charges, as well as two additional charges of felonious sexual assault based upon more specific information provided by the victim about two of the original alleged incidents. On appeal, the defendant argues that the trial court erred by: (1) granting the State's motion *in limine* seeking to admit evidence that the defendant provided alcohol and drugs to the victim and his friends on occasions other than the charged offenses; (2) denying his

pre-trial motion seeking to cross-examine the victim and N.G. about whether they were engaged in a homosexual relationship; and (3) refusing to give a requested jury instruction after the State made prejudicial comments during closing argument.

The relevant facts from the Hillsborough County trial follow. During the same time period as the conduct alleged in the Merrimack County trial, the victim visited the defendant's campground space in New Boston where he had a small trailer. Because there were only three beds in the trailer, the victim slept in the defendant's bed while the defendant's two sons slept in their own beds. Each time that the victim would visit, the defendant provided him with alcohol and drugs. On two separate occasions, the victim became intoxicated and awoke to find the defendant performing fellatio on him, *see* RSA 632-A:3, and on one of those occasions the defendant digitally penetrated the victim's anus, *see id.*

On appeal, the defendant argues that the trial court erred by denying his motion seeking to cross-examine the victim and N.G. about the same homosexual relationship he alleged existed in his Merrimack County trial. At the motion hearing, the defendant offered evidence substantially similar to that presented in the Merrimack County trial. Because this appeal does not raise any issues beyond those raised in the defendant's appeal from his Merrimack County convictions, we have consolidated his appeals and do not separately address his Hillsborough County appeal.

The defendant first argues that the trial court improperly admitted evidence that he provided alcohol and drugs to the victim and other minors on occasions other than the charged offenses. *See* N.H. R. Ev. 404(b). At trial, several witnesses testified that the defendant frequently provided alcohol and drugs to minors at his house. In its charge, the trial court included a jury instruction explaining that this evidence was to be used "only . . . if it has some tendency to prove that the defendant used alcohol to get [the victim] to submit to the alleged sexual activity."

Under Rule 404(b), evidence of other bad acts is inadmissible unless it is relevant for a purpose other than to prove the defendant's character or disposition, there is clear proof the defendant committed the other acts and the prejudice to the defendant does not substantially outweigh the probative value of the evidence. *See Glodgett I,* 144 N.H. at 690. We will uphold a trial court's decision to admit evidence absent an unsustainable exercise of discretion. *See id.; see also State v. Lambert,* 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

The State bears the burden in criminal matters of demonstrating the relevance of other bad acts. *See State v. McGlew,* 139 N.H. 505, 509 (1995). Here, the State offered the evidence to prove the existence of a plan. The

distinguishing characteristic of a plan "is the existence of a true plan in the defendant's mind which includes the charged and uncharged crimes as stages in the plan's execution." *State v. Whittaker*, 138 N.H. 524, 528 (1994) (quotation omitted). The bad acts must be intertwined with the charged offenses rather than a series of independent acts that, only in retrospect, resemble a design. *See State v. Melcher*, 140 N.H. 823, 828 (1996).

The trial court found that the defendant used alcohol and drugs as part of a plan to lure the victim to his trailer, ensuring that the victim would be available and susceptible to the defendant's sexual advances. The record supports this finding. The defendant's trailer was frequented by minors to gain access to alcohol and drugs. One reason for the victim's continued presence at the defendant's household was the availability of alcohol and drugs.

As the defendant does not contest that there was clear proof of the evidence, we next address whether the prejudicial effect of the evidence substantially outweighed its probative value. The defendant argues that the evidence unfairly prejudiced his case by painting him as a "degenerate," and that there was a significant risk the jury would convict him based upon this perception of his character. We disagree. Evidence that the defendant provided alcohol and drugs to the victim on the dates of the alleged offenses was admitted without objection. Therefore, evidence of the other bad acts added little to the jurors' perception of the defendant's character. Further, the trial court properly confined the alcohol and drug evidence to the question of the defendant's plan in its limiting instruction, and we presume jurors follow instructions. *See State v. Fortier*, 146 N.H. 784, 793 (2001). We therefore find no unsustainable exercise of discretion.

The defendant next argues that the trial court violated his State and Federal constitutional rights to confrontation when it prohibited him from cross-examining the victim and N.G. about their alleged homosexual relationship. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI. We first address the defendant's argument under our State Constitution, citing federal authority only to aid our analysis. *See State v. Ball*, 124 N.H. 226, 231-33 (1983). Because the Federal Constitution affords no greater protection in this area than the State Constitution, we need not undertake a separate federal analysis. *See State v. Dixon*, 144 N.H. 273, 278 (1999).

The defendant contends that the alleged homosexual relationship caused the victim to fabricate his allegations and motivated N.G. to lie in support of the victim's testimony. The trial court, citing the rape shield law, *see* RSA 632-A:6, II (1996); N.H. R. EV. 412, barred any cross-

examination relating to the victim's prior sexual activity, including the alleged relationship with N.G. We will not reverse a trial court's ruling limiting the scope of cross-examination absent an unsustainable exercise of discretion. *See State v. Spaulding*, 147 N.H. 583, 589 (2002).

■ The rape shield law provides sexual assault victims a right to privacy by prohibiting the introduction of evidence concerning their prior consensual sexual activities. *See* RSA 632-A:6, II; N.H. R. Ev. 412. We have held, however, that a defendant's right to confrontation may limit the application of the rape shield law where evidence of the victim's prior sexual activity is relevant in exposing a witness's possible bias or motive to lie. *See State v. Cannon*, 146 N.H. 562, 565 (2001). In cases where such evidence is relevant, however, it is admissible only where its probative value outweighs its prejudicial effect on the victim. *See Spaulding*, 147 N.H. at 589.

In support of his motion, the defendant offered an investigative report detailing statements made by D.G. Although he never witnessed any sexual activity between the victim and N.G., D.G. told the investigator that it was "obvious" that they were involved in a homosexual relationship. D.G. also stated the defendant told him that he "walked in" on N.G. and the victim in N.G.'s bedroom and that "something" had been going on.

■ Assuming without deciding that some or all of this evidence was admissible, it may have been relevant to prove the existence of a homosexual relationship between the victim and N.G. We agree with the trial court, however, that it was not sufficiently probative of the credibility of the victim and N.G. to outweigh its prejudicial effect. The defendant did not offer any evidence linking the alleged homosexual relationship with the witnesses' credibility. We are not persuaded that the mere existence of a homosexual relationship would motivate the victim and N.G. to testify falsely against the defendant. Moreover, the defendant was able to cross-examine the victim and N.G. regarding their close friendship in order to attempt to impeach their credibility. Accordingly, the trial court acted within its discretion in limiting the cross-examination.

Finally, the defendant argues that the following statement by the State during closing argument prejudiced his case and required a curative jury instruction:

> [D.G.] is the defendant's son. It is clear he doesn't like [the victim]. And his father is, quote, his pride and joy. You heard that go back and forth a few times. Does it make—is it surprising that he would defend his father. Let's go the other

way. Isn't it interesting the other son will testify against him. *Maybe he knows something that D.G. doesn't.*

(Emphasis added.)

The State may not ask the jury to base its decision upon evidence not in the record. *See State v. Vandebogart,* 139 N.H. 145, 160 (1994). However, "[a] prosecutor may draw reasonable inferences from the facts proven and has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge [them] to draw inferences of guilt from the evidence." *State v. Walton,* 146 N.H. 316, 319 (2001) (quotation omitted).

■ The defendant contends that the State improperly encouraged the jury to infer that N.G. had personal knowledge of the alleged offenses, a fact not in evidence. We disagree. The record reflects that N.G. and D.G. provided contradictory testimony about many material issues. Given the disparity in their testimony, the State drew a reasonable inference that N.G. may have known more about the alleged offenses than D.G. Because the State neither misstated the evidence nor invited the jury to speculate about facts not in the record, we agree with the trial court that no curative instruction was required.

*Affirmed.*

NADEAU, J., concurred; MURPHY, C.J., and SMITH and GALWAY, JJ., superior court justices, specially assigned under RSA 490:3, concurred.